UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MARY ANN BENSON, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>UNIVERSITY OF MAINE )<br>SYSTEM, )<br>)<br>Defendant. ) | 2:11-cv-00183-JAW |

**ORDER ON MOTION TO AMEND AMENDED COMPLAINT AND ON MOTION TO DISMISS AMENDED COMPLAINT**

Concluding that the Plaintiffs have properly stated a claim against the Chancellor of the University of Maine System for injunctive relief that relates back to the date of the original filing, the Court allows the Plaintiffs to amend their pending Complaint to add the Chancellor as a Defendant in his official capacity. The Court also allows the Plaintiffs to amend their Complaint to assert a violation of the Rehabilitation Act. Without objection from the Plaintiffs, the Court dismisses their Maine Human Rights Act claim against the University of Maine System because it violates the Eleventh Amendment.

I.   **STATEMENT OF FACTS**

   A.   **Procedural History**

On May 4, 2011, the Plaintiffs, former employees of the University of Southern Maine, filed a complaint in this Court, alleging that the University of

Maine System[1] (University) discriminated against them in violation of the Age Discrimination in Employment Act (ADEA) and the Maine Human Rights Act (MHRA) by refusing to hire them because of their age. *Compl.* (Docket # 1). On August 16, 2011, before the University had answered, the Plaintiffs filed an amended complaint.[2] *First Am. Compl.* (Docket # 4) (*First Am. Compl.*) On September 19, 2011, the University answered the First Amended Complaint. *Def.'s Ans. and Affirmative Defenses* (Docket # 6). On October 21, 2011, the Plaintiffs moved to amend the First Amended Complaint. *Pls.' Mot. for Leave to Amend Compl. Pursuant to FRCP 15(a)* (Docket # 12) (*Pls.' Mot.*). On November 14, 2011, the University objected to the Plaintiffs' motion to amend. *Def.'s Opp'n to Pls.' Mot. for Leave to Amend the Compl.* (Docket # 15) (*Def.'s Opp'n*). On the same day, the University moved to dismiss the First Amended Complaint. *Def.'s Mot. to Dismiss Pls.' First Am. Compl.* (Docket # 16) (*Def.'s Mot. to Dismiss*). On December 5, 2011, the Plaintiffs replied to both the University's opposition to their motion to amend and to its motion to dismiss. *Pls.' Reply to Def.'s Opp'n to Pls.' Mot. for Leave to Amend* (Docket # 19) (*Pls.' Reply*); *Pls.' Resp. to Def.'s Mot. to Dismiss* (Docket # 20) (*Pls.' Resp.*).

---

[1] The original Defendants were both the University of Southern Maine and the University of Maine System. *Compl.* at 1. In the First Amended Complaint, however, the Plaintiffs elected to proceed against the University of Maine System only. *First Am. Compl Injunctive Relief Sought* (Docket # 4) (*First Am. Compl.*).

[2] The Plaintiffs filed this First Amended Complaint as a matter of course. FED. R. CIV. P. 15(a)(1).

### B.     The Second Amended Complaint

With its motion to amend, the Plaintiffs filed a proposed Second Amended Complaint. *Pls.' Mot.* Attach. 1 *Pls.' Proposed Second Am. Compl. Injunctive Relief Sought* (Docket # 20) (*Second Am. Compl.*). In the Second Amended Complaint, the Plaintiffs seek to add as a Defendant Richard Pattenaude, in his official capacity as Chancellor of the University of Maine System.[3]  *Id.* ¶¶ 11-15.  They allege three statutory causes of action arising under: (1) the ADEA, (2) Section 504 of the Rehabilitation Act (Rehabilitation Act), and (3) the MHRA.  *Id.* ¶ 1.  They claim that the Plaintiffs, ranging in age from 55 to 65, had worked for the University of Southern Maine between three and twenty-seven years and were well qualified to perform their positions.  *Id.* ¶¶ 29-59.  They assert that in the summer of 2009, the University of Maine System informed them that it was going to restructure the Career Development/Student Advising/Student Success Departments where they worked and that they would be terminated but would be allowed to apply for positions in the new Student Success Center. Id. ¶¶ 60-61.  They claim that when they applied for these positions, the University used a discriminatory hiring process and passed over each of the Plaintiffs, hiring younger, less qualified, less experienced applicants.  *Id.* ¶¶ 62-83.

The Second Amended Complaint would also add a claim for disability discrimination under the Rehabilitation Act.  One Plaintiff, Louise Nisbet, alleges that in addition to being 62, she has a diagnosed disability—attention deficit

---

[3] Richard Pattenaude is no longer the Chancellor; James H. Page became Chancellor of the University of Maine System in March 2012.

3

disorder (ADD), a record of disability, and was regarded by the University as being disabled. *Id.* ¶ 38-45. She claims that during her employment her supervisor mentioned her memory problems, that she consequently obtained multiple neuropsychological evaluations, that her supervisor asked her about the results of these tests, that Ms. Nisbet informed her supervisor that she had ADD, that her supervisor's inquiries violated the Rehabilitation Act, that her supervisor again violated the Rehabilitation Act by revealing this information to other managers, and that the University improperly used this information against her during her application process in denying her job application. *Id.* ¶¶ 46-51, 63-74.

### C. The Plaintiffs' Motion to Amend

In their motion to amend, the Plaintiffs provide grounds for allowing the Second Amended Complaint, which was filed on October 21, 2011. *Pls.' Mot.* at 1-2. They note that the Scheduling Order set December 6, 2011 as the deadline for amending pleadings[4] and that Rule 15(a) states that the court "should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). Anticipating the University's objection, they argue that the motion is not futile. *Pl.'s Mot.* at 4. In response to the University's objections to the First Amended Complaint, they say that adding Chancellor Pattenaude as a Defendant confers jurisdiction under *Ex Parte Young*, 209 U.S. 123 (1908). *Id.* Furthermore, they claim that the Second Amended Complaint's Rehabilitation Act allegation is meritorious. *Id.* at 5.

---

[4] That scheduling order was since vacated by the Magistrate Judge's order granting without objection the Defendant's Motion to Amend Scheduling Order. *Def.'s Motion to Amend Scheduling Order* (Docket # 9); *Order* (Docket # 11). The new order instructed the Plaintiffs to file any motion to amend by October 24, 2011, and the Defendants to file any motion to dismiss by November 21, 2011. Both parties complied with these deadlines.

4

Finally, they argue that the disparate impact allegations of the Second Amended Complaint state a MHRA claim that would fall within the Court's supplemental jurisdiction. *Id.*

### D. The University's Position

The University's position differs tonally between the motion to dismiss, which is based on the contents of the First Amended Complaint, and its opposition to the motion to amend, which assumes the allegations in the Second Amended Complaint.  As the Plaintiffs accede to the dismissal of the First Amended Complaint, the question is whether to grant the motion to amend.

In its opposition, the University firmly rejects the Plaintiffs' motion to amend as a mere "tactical measure to avoid having their age discrimination claims under the [MHRA] dismissed on Eleventh Amendment grounds." *Def.'s Opp'n* at 1.  The University says that "the Eleventh Amendment precludes a pendent state law claim against the University in this Court regardless of the nature or viability of their federal law claims." *Id.*  Adding Chancellor Pattenaude as a defendant does not, in the University's view, "save Plaintiffs' state law claims from dismissal under the Eleventh Amendment." *Id.* at 1-2.  It says that the proposed *Ex Parte Young* claim is untimely, does not relate back to the filing of the Complaint, and must be dismissed. *Id.* at 2.  Finally, the University asserts that Ms. Nisbet's Rehabilitation Act claim cannot survive a motion to dismiss under Rule 12(b)(6). *Id.*

5

### E. The Plaintiffs' Reply

In their reply, the Plaintiffs say that the University is wrong about whether the addition of Chancellor Pattenaude relates back to the original filing. *Pls.' Reply* at 1. They contend that Rule 15(c) applies and that they have met the provisions of that Rule. *Id.* at 1-3. Acknowledging that it was not "until after Plaintiffs filed suit, and after the relevant limitations period expired," that they became "aware that the University of Maine System could likely assert state sovereign immunity in order to limit liability under the ADEA," the Plaintiffs argue that the addition of Chancellor Pattenaude seeks "to remedy this mistake of identity and move forward with the same age discrimination claims as they originally pled, now against the proper party." *Id.*

Regarding the Rehabilitation Act claim, the Plaintiffs protest the University's characterization of their motives in filing Ms. Nisbet's disability discrimination claim. *Id.* at 4-5. They insist the claim is not a subterfuge to hook federal jurisdiction but a separately viable cause of action. *Id.* at 5-6.

## II. DISCUSSION

### A. Legal Standards

Although seemingly cloudy, the legal standard for resolving the parties' dispute is clear: the standard for a motion to dismiss applies. The potential confusion comes from the unusual procedural presentation of the legal issues. After the First Amended Complaint was filed, the University moved to dismiss for lack of subject-matter jurisdiction and the Plaintiffs conceded that the First Amended

Complaint may be dismissed. *Pls.' Resp.* at 1 ("Plaintiffs do not oppose Defendant's Motion to Dismiss as it relates to Plaintiff's First Amended Complaint"). At the same time, the Plaintiffs moved to further amend their Complaint pursuant to Rule 15(a) which provides that "[t]he court should freely give leave [to amend] when justice so requires." *Pls.' Mot.*; FED. R. CIV. P. 15(a)(2)). According to the Plaintiffs, leave to amend a pleading should be given "unless the amendment 'would be futile, or reward . . . undue or unintended delay.'" *Pls.' Mot.* at 2 (quoting *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 11-12 (1st Cir. 2004)). The University objected on the grounds that the attempted addition of Chancellor Pattenaude was barred by the statute of limitations and that absent the claim against the Chancellor, the proposed Second Amended Complaint would fail—just as the First Amended Complaint failed—because the Plaintiffs' claim against the University is prohibited by the Eleventh Amendment. *Def.'s Opp'n*. According to the University, that makes the amendment futile. *Def.'s Opp'n*. at 3.

As both parties correctly note, the legal standard for a motion to dismiss is also relevant. *Pls.' Mot.* at 4 ("Futility is gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6)"); *Def.'s Opp'n* ("courts apply the same standard of legal sufficiency as applies to a Rule (12)(b)(6) motion"). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996). The First Circuit has explained that "[t]here is no practical difference . . . between a denial of a motion to amend based on futility and the grant of a motion to

dismiss for failure to state a claim." *Id.* In ruling on a motion to dismiss, a court is required to "accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiff." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 41 (1st Cir. 2009) (quoting *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001)). To survive a motion to dismiss, a plaintiff must allege "sufficient facts to show that he has a plausible entitlement to relief." *Sanchez*, 590 F.3d at 41 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)). The Court applies these same standards to the proposed Second Amended Complaint in this case. *See Glassman*, 90 F.3d at 623; *Adorno v. Crowley Towing & Trans. Co.*, 443 F.3d 122, 126 (1st Cir. 2006) ("In assessing futility, the district court must apply the standard which applies to motions to dismiss under [Federal Rule of Civil Procedure] 12(b)(6)"). Although the Plaintiffs typically have the burden on their motion for leave to amend, here the University has posited—as a motion to dismiss—what is effectively an affirmative defense to the Plaintiffs' motion and so the Court imposes the burden on the University to sustain its defense. *See Martinez-Rivera v. Sanchez Ramos*, 498 F.3d 3, 7 (1st Cir. 2007) (noting in a case involving *sua sponte* dismissal that "[t]he burden is on the party defending the dismissal").

### B. The Second Amended Complaint, the Statute of Limitations, and the Chancellor

Each of the Plaintiffs' versions of the facts in this case alleges that the Equal Employment Opportunity Commission (EEOC) dismissed their charges on February 4, 2011. *Compl.* ¶ 13; *First Am. Compl.* ¶ 13; *Second Am. Compl.* ¶ 18. Under the

ADEA, the Plaintiffs had 90 days from the date the EEOC dismissed their charges to file suit. 29 U.S.C. § 626(e). The Plaintiffs filed their original Complaint against the University on May 4, 2011, within the 90-day period. *Compl.* However, they filed their motion to amend the Second Amended Complaint to name Chancellor Pattenaude as a defendant on October 21, 2011, outside the 90-day window.[5] *Pls.' Mot.* The University says that the addition of Chancellor Pattenaude is thus barred by the ADEA statute of limitations. *Def.'s Opp'n* at 5-7. The Plaintiffs respond that the addition of Chancellor Pattenaude relates back under Rule 15(c) to the date of the filing of the original Complaint and therefore the Second Amended Complaint is not barred by the statute of limitations. *Pls.' Reply* at 1-4.

> Rule 15(c)(1)(C) provides:
>
> An amendment to a pleading relates back to the date of the original pleading when . . . the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

FED. R. CIV. P. 15(c)(1)(C).[6]

The University relies heavily on *Leonard v. Parry*, 219 F.3d 25 (1st Cir. 2000). In *Leonard*, a plaintiff timely sued the putative driver of a motor vehicle only to realize too late that someone else was driving the car. 219 F.3d at 27.

---

[5] The Plaintiffs' First Amended Complaint, filed August 16, 2011, was also outside the 90-day window. *First Am. Compl.*
[6] The University bases its opposition solely on the last Rule 15(c) criterion—knowledge of a mistake in the proper party's identity—and the Court similarly restricts its analysis.

9

Serving the correct driver after the statute of limitations had run, the plaintiff sought to amend his complaint and relate the amendment back to the original timely filing. *Id.* After reviewing the three criteria under Rule 15(c), the First Circuit allowed the amended complaint to relate back to the original filing. *Id.* at 31. The *Leonard* Court described the standard for the "identity" test:

> To satisfy this criterion, the amendment's proponent must show not only that he made a mistake anent the proper party's identity, but also that the later-named party, within the prescribed time limit, knew or should have known that, but for this mistake, the action would have been brought against her.

*Id.* at 28. Factual mistakes of identity aside, the First Circuit distinguished errors of law: "Rule 15(c)(3)[7] was not designed to remedy a mistake in the selection of a legal theory." *Id.* at 31. The University, arguing that the choice to sue the University and not the Chancellor was a "strategic decision," contends that the Plaintiffs' actions were "not a case of mistaken identity under Federal Rule 15(c)(1)(C)." *Def.'s Opp'n* at 7.

The Plaintiffs counter with *Lynch v. Massachusetts State Senate*, 495 F. Supp. 2d 175 (D. Mass. 2007). *Lynch* is remarkably similar to the facts in this case. In *Lynch*, after being discharged from his job with the Massachusetts State Senate, the plaintiff sued the State Senate for violating the ADEA. *Id.* at 176. Later realizing that the proper defendant was the President of the Massachusetts State Senate, the Plaintiff moved to amend the complaint to include its President, Therese Murray. *Id.* The Defendants objected to the amendment on the ground

---

[7] The *Leonard* Court interpreted an incarnation of Rule 15 that predated the general restyling of the Rules in 2007. Former Rule 15(c)(3), cited by the *Leonard* Court, is now encompassed in Rule 15(c)(1)(C) and is substantively unchanged.

that the "Proposed Second Amended Complaint, the ADEA claim against Murray, is barred by the statute of limitations, as more than ninety days elapsed between [the date of the EEOC notice], and Plaintiff's filing of his Motion for Leave to File Second Amended Complaint." *Id.* The district court allowed the amendment to relate back to the filing of the original complaint. *Id.* at 177-79. The court reasoned that because the State Senate President and the State Senate itself share "substantial identity of interest," it was "proper to impute timely notice to Defendant Murray." *Id.* at 177. The *Lynch* Court observed that Rule 15(c) was changed "to reverse a number of circuit decisions which refused to allow a plaintiff to amend its complaint to properly name the head of an agency instead of the agency itself." *Id.* (citing FED. R. CIV. P. 15, advisory committee's note of 1991). The district court wrote that "Murray and the State Senate's interests are so intertwined that it makes sense to construe notice to one as notice to another and . . . adding Murray does not change the facts or issues of the case." *Id.* It distinguished *Leonard* by explaining that in *Lynch*, the theory of the case did not change; the plaintiff "simply made the legal mistake of suing the state institution instead of its officer." *Id.* at 178.

Curiously, neither party mentioned *Krupski v. Costa Crociere S.p.A.*, --- U.S. ---, 130 S. Ct. 2485 (2010), the United States Supreme Court's latest pronouncement on Rule 15(c)(1)(C). In *Krupski*, the Supreme Court rejected the defendant's argument that the "key issue under Rule 15(c)(1)(C)(ii) is whether the plaintiff made a deliberate choice to sue one party over another." *Id.* at 2494. The Supreme Court allowed that "a deliberate choice to sue one party instead of another while

fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identify." *Id.* However, it disagreed with the proposition that "any time a plaintiff is aware of the existence of two parties and chooses to sue the wrong one, the proper defendant could reasonably believe that the plaintiff made no mistake." *Id.* The Supreme Court emphasized that the "reasonableness of the mistake is not itself an issue." *Id.* Thus, if the plaintiff makes a deliberate choice and that choice turns out to be mistaken, this "kind of deliberate but mistaken choice does not foreclose a finding that Rule 15(c)(1)(C)(ii) has been satisfied." *Id.* The Supreme Court stressed that if "the failure to name the prospective defendant in the original complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity, the requirements of Rule 15(c)(1)(C)(ii) are not met." *Id.* at 2496.

The *Krupski* Court explained that its reading is "consistent with the purpose of relation back: to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general and Rule 15 in particular, for resolving disputes on their merits." *Id.* at 2494 (citing FED. R. CIV. P. 15, advisory committee's note of 1966). The Court distinguished between a "prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him" and the "prospective defendant who understood, or who should have understood, that he escaped suit

12

during the limitations period only because the plaintiff misunderstood a crucial fact about his identity." *Id.* The former is entitled to repose; the latter is not. *Id.*

The *Krupski* Court's description of the history of Rule 15(c)(1)(C) is enlightening:

> That provision was added in 1966 to respond to a recurring problem in suits against the Federal Government, particularly in the Social Security context. Individuals who had filed timely lawsuits challenging the administrative denial of benefits often failed to name the party identified in the statute as the proper defendant—the current Secretary of what was then the Department of Health, Education, and Welfare—and named instead the United States; the Department of Health, Education, and Welfare itself; the nonexistent "Federal Security Administration"; or a Secretary who had recently retired from office. By the time the plaintiffs discovered their mistakes, the statute of limitations in many cases had expired, and the district courts denied the plaintiffs leave to amend on the ground that the amended complaints would not relate back. Rule 15(c) was therefore "amplified to provide a general solution" to this problem. It is conceivable that the Social Security litigants knew or reasonably should have known the identity of the proper defendant either because of documents in their administrative cases or by dint of the statute setting forth the filing requirements. Nonetheless, the Advisory Committee clearly meant their filings to qualify as mistakes under the Rule.

*Id.* at 2494-95 (internal citations omitted).

In its 2010 *Krupski* decision, the Supreme Court explained that under Rule 15(c)(1)(C) the identity inquiry is not what the plaintiff but what the defendant "knew or should have known." *Id.* at 2493. In the words of the Supreme Court, the question is whether the prospective defendant "knew or should have known that it would have been named as a defendant but for an error." *Id.*

Following *Krupski*, the First Circuit addressed Rule 15(c)(1)(C) in *Rodriguez v. Municipality of San Juan*, 659 F.3d 168 (1st Cir. 2011), where it focused on (1)

13

the amending party's failure to explain "what mistake he made on the proper-party front" and (2) whether the newly added defendant "should have known that [the plaintiff] would have sued her in the first place but for his . . . mistake." *Id.* at 181.

Regarding the first inquiry, the Plaintiffs here explained that they "mistakenly believed they could directly file suit against their employer, the University of Maine System." *Pls.' Reply* at 3. They concede that it was "[n]ot until after Plaintiffs filed suit, and after the relevant limitations period expired," that "they [became] aware that the University of Maine System could likely assert state sovereign immunity in order to limit liability under the ADEA, making Chancellor Pattenaude the appropriate defendant for purposes of an ADEA claim." *Id.*

The University's position—that this type of mistake is not the type contemplated by Rule 15(c)(1)(C)—runs against the Rule's rationale as explained by the Supreme Court and the advisory committee. In 1991, the advisory committee expressly stated that the amendments to this provision of Rule 15 were meant to "produce results contrary to those reached in *Gardner v. Gartman*, 880 F.2d 797 (4th Cir. 1989), *Rys v. U.S. Postal Service*, 886 F.2d 443 (1st Cir. 1989), *Martin's Food & Liquor, Inc. v. U.S. Dept. of Agriculture*, [702 F. Supp. 215] (N.D. Ill. 1988)." FED. R. CIV. P. 15, advisory committee's note of 1991.[8] Under this reasoning, the

---

[8] In *Gardner*, the plaintiff initially sued the Department of the Navy, not the Secretary of the Navy, and by the time she realized that the Secretary was the proper party, the district court did not allow her proposed amendment to relate back under Rule 15(c) and the Fourth Circuit affirmed the dismissal of the lawsuit. 880 F.2d at 798-99. In *Rys*, a postal worker timely sued a host of defendants, including the United States Postal Service but not the Postmaster General, who was the only "statutorily appropriate" defendant. 886 F.2d at 444. Though "mindful of the apparent harsh result," the First Circuit refused to apply Rule 15(c) to the plaintiff's late attempt to name the Postmaster General in the lawsuit. *Id.* at 448. Finally, in *Martin's Food*, a district court dismissed

Plaintiffs' mistake in naming the University of Maine System instead of its chancellor is encompassed by Rule 15 and the Plaintiffs' amendment seeking to cure this mistake should be permitted to relate back.

Regarding the second *Rodriguez* inquiry—whether the newly named party knew or should have known that he would have been sued in the first place but for the plaintiff's mistake—Chancellor Pattenaude was the official within the University of Maine System, which the Plaintiffs served on August 29, 2011 when they initiated their lawsuit. *Summons Returned* (Docket # 5). Accordingly, he had actual notice of the Plaintiffs' lawsuit against the University of Maine System and there is a sufficient "identity of interest" between the University and its Chancellor to justify application of the relation-back protections of Rule 15(c)(1)(C). *Young v. Lepone*, 305 F.3d 1, 15 (1st Cir. 2002) (internal citations omitted) ("As to defendants, identity of interest typically means that parties are so closely related in their business operations or other activities that the institution of action against one serves to provide notice of the litigation to the other"); *Lynch*, 495 F. Supp. 2d at 177; 6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1499 (2010 ed.).

In sum, as the authors of Federal Practice and Procedure have noted, the 1966 amendments of Rule 15 have had the "desirable effect of facilitating a citizen's suit against the sovereign by eliminating an unnecessary trap for the unwary." *Id.* § 1502. Here, where the Chancellor had actual knowledge of the lawsuit within the

---

a lawsuit because the plaintiff had named the United States Department of Agriculture as the defendant, not the United States. 402 F. Supp. 215, 215 (N.D. Ill. 1988).

prescribed period and should have known that he would have been named as a defendant but for the Plaintiffs' error, the Court concludes that Rule 15(c)(1)(C) allows the Plaintiffs' otherwise time-barred amended pleading to relate back to the filing of the original Complaint against the University of Maine System.

### C. The Eleventh Amendment and the ADEA Claim

In its Motion to Dismiss, the University says that even if the Plaintiffs are allowed to amend the Complaint, their lawsuit must still be dismissed because, as an arm of the state of Maine, the University is immune from suit under the Eleventh Amendment. *Def.'s Mot.* at 10-12. In its motion, the University points to several Maine statutory provisions and the University's 2010 Annual Financial Report to confirm that it is an arm of the state. *Id.* at 4-10. In response, the Plaintiffs say that they are asking only for injunctive relief under the ADEA against Chancellor Pattenaude under the *Ex Parte Young* doctrine. *Pls.' Resp.* at 1.

The Plaintiffs' First Amended Complaint contained two counts: (1) an ADEA claim and (2) an MHRA claim. *First Am. Compl.* at 8-9. The University moved to dismiss the First Amended Complaint on the ground that the Eleventh Amendment bars suit against "a state entity such as the University . . . in federal court for alleged violations of state or federal law regardless of the type of relief sought." *Def.'s Mot. to Dismiss* at 11 (internal punctuation and citation omitted). In response, the Plaintiffs wrote that they "do not oppose Defendant's Motion to Dismiss as it relates to the Plaintiff's (sic) First Amended Complaint," but they assert that:

> The ADEA and Rehab Act claims set out in Plaintiffs' Second Amended Complaint state claims upon which relief can be granted and which are not subject to dismissal pursuant to Defendant's assertion of sovereign immunity.

*Pls.' Resp.* at 1. The Second Amended Complaint contains three causes of action: (1) an ADEA count, (2) a Rehabilitation Act count, and (3) an MHRA count. *Second Am. Compl.* at 17-18. In their reply, the Plaintiffs concede that the Eleventh Amendment bars their MHRA count. *Pls.' Reply* at 1, n.1 ("Upon review of the Defendant's briefs on the issue, Plaintiff does (sic) not oppose Defendant's assertion of sovereign immunity with respect to the Plaintiffs' MHRA claims against the University of Maine System"). Based on the Plaintiffs' acquiescence, the Court dismisses Count III—the MHRA count—of the Second Amended Complaint.

The Court turns to the University's contention that, even as amended, the Plaintiffs are still barred from proceeding against the University. Once the Plaintiffs included the Chancellor in his official capacity and limited their ADEA demand to injunctive relief, the Eleventh Amendment no longer prohibited the lawsuit. *Irizarry-Mora v. Univ. of P.R.*, 647 F.3d 9, 11 n.1 (1st Cir. 2011) (distinguishing lawsuits for injunctive relief against a public university from lawsuits for injunctive relief against its officials); *Negron-Almeda v. Santiago*, 579 F.3d 45, 52 (1st Cir. 2009). As the First Circuit has noted, "[i]t is well settled that neither a state agency nor a state official acting in his official capacity may be sued for damages." *Wang v. N.H. Bd. of Registration in Med.*, 55 F.3d 698, 700 (1st Cir. 1995). "In contrast to damages, the Eleventh Amendment does not bar claims for prospective injunctive relief against state officials in their official capacity."

17

*Negron-Almeda,* 579 F.3d at 52.  Thus, the *Ex Parte Young* exception "allows federal courts, notwithstanding the absence of consent, waiver or evidence of congressional assertion of national hegemony, to enjoin state officials to conform future conduct to the requirements of federal law."  *Rosie D. ex rel. John D. Swift*, 310 F.3d 230, 234 (1st Cir. 2002) (internal punctuation and citation omitted).

Based on this clear authority, the University is correct that the Plaintiffs may not maintain an ADEA claim, regardless of the relief sought, against the University itself.  However, the Plaintiffs are correct that they may proceed under the ADEA—for injunctive relief only—against the University's chancellor.

### D.     Rehabilitation Act Claim

The last issue is whether Ms. Nisbet's newly filed Rehabilitation Act claim should be disallowed as futile.  The University acknowledges that Congress has abrogated the state's Eleventh Amendment immunity under the Rehabilitation Act.  *Def.'s Opp'n* at 9 (citing *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 129 (1st Cir. 2003)).  Yet, the University suggests that Ms. Nisbet has "conjured a claim against the University under the Rehabilitation Act because it is one of the few exceptions to sovereign immunity."  *Def.'s Opp'n* at 9.  Claiming that "Plaintiff's counsel's reason for bringing this claim now is entirely transparent," the University says that Ms. Nisbet's Rehabilitation Act claim "should be rejected by this Court."  *Id.* at 10.

The Rehabilitation Act prohibits discrimination against an individual with a disability based on that disability.  29 U.S.C. § 794.  It defines "an individual with a disability" as "'any person who has a physical or mental impairment which

substantially limits one or more of such person's major life activities' or 'has a record of such impairment' or 'is regarded as having such an impairment.'" *McDonough v. Donahoe*, No. 11-1477, 673 F.3d 41, 2012 U.S. App. LEXIS 5373, at *9-10 (1st Cir. Mar. 14, 2012) (quoting *Rolland v. Potter*, 492 F.3d 45, 47 (1st Cir. 2007)). Ms. Nisbet alleges discrimination based on each of the three alternative prongs, claiming that she "was not hired because of her disability, because of her record of disability, and because she was regarded as a person with a disability." *Second Am. Compl.* ¶ 73.

The University argues that Ms. Nisbet's claim fails because she has not alleged that she has "a disability within the meaning of the Act" or that the University "regarded her" as having such a disability. *Def.'s Opp'n* at 10. Citing the Rehabilitation Act's definition of disability, the University contends that Ms. Nisbet failed to allege that "her ADD had a substantial limitation on any major life activity" and therefore "has not properly alleged a disability under the Rehabilitation Act." *Id.* Furthermore, it maintains that she "does not allege in her proposed amended complaint that the persons involved in the hiring process for the Student Success Center 'regarded her' as having ADD and therefore cannot state a claim under that prong of the Rehabilitation Act either." *Id.* (citing *Bailey v. Georgia-Pacific Corp.*, 306 F.3d 1162, 1169 (1st Cir. 2002)). The University says that the "inferential leap" between the allegations in the Second Amended Complaint and the "regarded as" prong is too great to allow Ms. Nisbet to maintain the Rehabilitation Act action. *Id.* at 11-12.

The Court rejects the University's arguments. The Court does not know quite what to make of the University's attack on Plaintiffs' counsel's motives, except to note that there is no evidence in this record that they conjured up her claim. The Court has reviewed the specific allegations in the Rehabilitation Act count and concludes that the Second Amended Complaint contains sufficient specificity to survive dismissal. Whether a factfinder will conclude that the evidence is sufficient to make the case is not before the Court, but the Court readily concludes that the allegations are adequate at this early stage.

### III. CONCLUSION

The Court GRANTS the Plaintiffs' Motion for Leave to Amend Complaint (Docket # 12). Without objection, the Court further GRANTS the Defendants' Motion to Dismiss the First Amended Complaint (Docket # 16). Also, without objection from the Plaintiffs, the Court GRANTS the University of Maine System's Motion to Dismiss, but only as to Count III of the Plaintiffs' Second Amended Complaint; the Court otherwise DENIES the Defendants' Motion to Dismiss the Plaintiffs' Second Amended Complaint (Docket # 16).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 24th day of April, 2012